### PREY BROTHERS LIVE STOCK COMMISSION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6464, 8385. Promulgated December 9, 1927.

*J. S. Boyd, Esq., Leslie E. Greene, Esq.*, and *Ralph B. Mayo, C. P. A.*, for the petitioner.
*P. J. Rose, Esq.*, for the respondent.

OPINION.

SIEFKIN: Petitioner asserts it is a personal service corporation, defined in section 200 of the Revenue Act of 1918 to mean:

* * * A corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor * * *.

In the view we take of the case it is unnecessary to examine the facts in the light of the tests prescribed by the quoted excerpt from the statute other than the prerequisite that "capital invested or borrowed, is not a material income-producing factor." As to this aspect of the question petitioner urges that "income" as used in the statute means net income and, therefore, losses being sustained on the loans arranged for patrons and on the Sand Hill Ranch project, that no "income" was derived from those sources. We think capital was a material income-producing factor even though the capital invested in and the income from those items be excluded from consideration. We refer to the use of capital to carry patrons in connection with the strictly commission business. It appears that petitioner's capital stock and surplus account (though credits to stockholders be ex-

cluded) was in excess of $40,000 from July 1, 1918, until some time between June 30, 1919, and December 31 of that year, when the capital made up of these combined items totaled more than $32,000. Petitioner at times found it essential to borrow money in undisclosed amounts to supplement available invested capital to enable it to make remittances to shippers in advance of collections and to pay for stock purchased before it received payment from the purchasers. Aside from unknown quantities of borrowed capital admittedly employed, it seems apparent that the invested capital item of $40,000 was a substantial factor in earning income. Petitioner rendered a dual service—the service of buying and selling stock, which was personal in its nature, and the service of providing funds to carry the customers, which was a service capitalistic in nature. It is true that each customer was carried for only a few days, but capital sufficient for that purpose was deemed essential to petitioner's business and was substantial in amount, and not incidental, when compared with the size of petitioner's business as indicated by commissions received. It is also true that the remuneration for this dual service took the form of commissions. Yet where both services were rendered and each was necessary to petitioner's successful operations, it can scarcely be said that the comparatively substantial capital used was not an income-producing factor or that such income could be primarily ascribed to the buying and selling activities of the stockholders. In this respect, the case is to be distinguished from *Lee Live Stock Commission Co.,* 7 B. T. A. 532, and is similar to *Denver Live Stock Commission Co.,* 7 B. T. A. 985.

Reviewed by the Board.

*Judgment will be entered for the respondent.*